1

2

3

4                    UNITED STATES DISTRICT COURT

5                          DISTRICT OF NEVADA

6    RASHON K. KING,                          Case No. 3:16-cv-00177-MMD-WGC

7                              Plaintiff,     **REPORT & RECOMMENDATION OF**
                                              **U.S. MAGISTRATE JUDGE**
8          v.
                                              Re: ECF Nos. 21, 46
9    JAMES G. COX, *et al.*,

10                            Defendants.

11

12         This Report and Recommendation is made to the Honorable Miranda M. Du, United States

13   District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

14   § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

15         Before the court is a Motion for Summary Judgment filed by defendants Romeo Aranas,

16   Paul Biter, Gloria Carpenter, Dawn Jones, and Georgia Luce. (ECF Nos. 21, 21-1 to 21-7.) This

17   motion, while it includes defendant Dawn Jones' name, sets forth no substantive argument with

18   respect to Jones, who filed her own motion separately. Plaintiff filed a response (ECF No. 27), and

19   was subsequently granted leave to file a supplemental opposition (erroneously characterized as an

20   amendment under Rule 15) (ECF No. 34).[1] Defendants filed a reply (ECF No. 29), as well as a

21   supplemental brief in response to Plaintiff's supplement to his opposition. (ECF No. 45.)

22         Also before the court is Dawn Jones' Motion for Summary Judgment. (ECF Nos. 46, 46-1

23   to 46-6.) Plaintiff filed a response. (ECF Nos. 49, 50.) Jones filed a reply. (ECF No. 52.) Plaintiff

24   filed a response to Jones' reply brief (ECF No. 54), which Defendants moved to strike (ECF No.

25   55). The undersigned issued an order granting the motion to strike, and the sur-reply, which was

26   filed without leave of court, was stricken pursuant to Local Rule 7-2.

27

28
_____

      [1] While Plaintiff erroneously based the motion for leave on Rule 15, which governs amendments to a
*pleading,* the court utilized its discretion to permit supplemental briefing under Local Rule 7-2.

After a thorough review, the court recommends that Defendants' motion (ECF No. 21) should be granted with respect to defendant Luce, but denied with respect to the remaining Defendants; and, that defendant Jones' motion (ECF No. 46) should be denied.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. The Fourth Amended Complaint is the operative pleading. (ECF No. 7.) The court screened the Fourth Amended Complaint pursuant to 28 U.S.C. § 1915A, and allowed Plaintiff to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim related to his dental care. (Screening Order, ECF No. 11.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP), and briefly at High Desert State Prison (HDSP). (*Id*.) Defendants are Romeo Aranas, Paul Biter, Gloria Carpenter, Dawn Jones, and Georgia Luce. Cox, Baker, and Neven, who were named in the Fourth Amended Complaint, were dismissed with prejudice. (*Id*.)

Plaintiff alleges that starting in October 2014, he filed multiple medical requests about severe pain due to cracked and broken teeth. (ECF No. 7 at 5.) He claims prison officials did nothing. (*Id*.) He avers that his requests were replied to by Luce and Jones, who responded to his complaints by stating that they were taking care of toothaches first, that Plaintiff was on the list to be seen, and that the prison did not have a dentist at that time. (*Id*.) Plaintiff grieved the medical refusals, which were denied by Jones, Carpenter, and Aranas. (*Id*.)

On January 6, 2015, Plaintiff alleges that he finally saw a dentist, who told him that he had two "really bad teeth." (*Id*. at 6.) One tooth was cracked through, with half missing, and the other had a hole in it, causing sensitivity. (*Id*.) The dentist fixed one tooth during the appointment, and told Plaintiff to put in an appointment request for the other tooth, and it should not take longer than four months for him to be seen again. (*Id*.) After the first tooth was fixed, Plaintiff filed multiple kites stating he was in severe pain and asked to see a dentist. (*Id*.) He was informed there was no dentist available. (*Id*.) He was not given any pain medication during this time. (*Id*.) He was finally seen for the second tooth on June 2, 2016, six months later. (*Id*.)

Plaintiff also alleges that he filed a request for partial dentures on December 17, 2014, because he had missing teeth and swollen, raw, bleeding gums. (*Id*.) On June 9, 2015, in response to multiple medical requests, he was finally put on a soft-food diet, but was not given pain medication. (*Id*.)

Later, Plaintiff was transferred to HDSP, where Plaintiff avers that defendant Dentist Biter told Plaintiff they could not treat the hole in his tooth or issue partial dentures because the process would take several procedures and Plaintiff was only at HDSP temporarily. (*Id*. at 7.) Dr. Biter ordered that Plaintiff keep receiving his soft-food diet, stating that Plaintiff had "inadequate teeth posterior for proper chewing." (*Id*.)

Though they filed their motions separately, each defendant solely argues that they are entitled to summary judgment because they did not personally participate in the alleged constitutional violation; and, that they are entitled to qualified immunity because the law is clear that their actions did not rise to the level of personal participation, and even if they did, they were not on notice that such action could constitute personal participation.

Plaintiff, on the other hand, argues that each of the Defendants was given notice that he was suffering in pain, had broken teeth and raw and bleeding gums, through grievances, kites or request forms, and failed to do anything.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

- 3 -

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of

- 4 -

material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

## III. DISCUSSION

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997).

"Dental care is one of the most important medical needs of inmates." *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989) (citation and quotation marks omitted). "[T]he [E]ighth [A]mendment requires that prisoners be provided with a system of ready access to adequate dental care." *Id*. (citation omitted).

Once a serious medical need is established, the plaintiff must show that the defendant acted with deliberate indifference, which is present when a prison official "knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013).

Defendants are correct that for a defendant to be liable under section 1983, there must be a showing of personal participation in the constitutional rights alleged to have been violated. *See Colwell v. Bannister,* 763 F.3d 1060, 1070 (9th Cir. 2014) (citing *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). A supervisor defendant may be held liable if he or she knows of the alleged violations and failed to act. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court will now address the arguments asserted by the Defendants that they did not personally participate in the alleged violation so as to be held liable under section 1983, and that they are entitled to qualified immunity.

**A. Factual Summary**

**1. Medical and Inmate Request Forms**

Plaintiff sent a request on May 5, 2014, asking for a dental exam on his teeth. (ECF No. 21-6 at 2; ECF No. 27 at 42.) The response section states: "All dental exams are on hold until all the toothaches are caught up." It also states: "Unfortunately, cleanings and exams are not available at this time." (*Id*.) It is signed by D. Jones, R.N., with a date of September 23, 2014. It also contains the signature of Georgia Luce, with a date of May 7, 2014.

Plaintiff sent an inmate request form on August 27, 2014, stating that his teeth were breaking and chipping off, and needed to be looked at as soon as possible. (ECF No. 21-4 at 2; ECF No. 27 at 66.) He was advised that he was on the list. The response has no signature.

1    Plaintiff sent a request on October 18, 2014, stating that he was missing teeth in the back

2    of his mouth which caused pain, bleeding, and swelling of his gums, and he asked for partial

3    dentures. (ECF No. 21-6 at 3; ECF No. 27 at 78.) In response, he was told he would be placed on

4    the list to be seen. There is no signature on the response.

5    Plaintiff sent another request on October 30, 2014, asking for a dental exam because his

6    teeth were breaking and chipping. (ECF No. 21-6 at 4; ECF No. 27 at 44.) In response, he was told

7    he was on the list. There is no signature with the response.

8    On November 27, 2014, he sent a request advising that it was hard for him to eat, and that

9    his gums would get swollen and bleed when he was chewing, causing difficulty eating. (ECF No.

10    21-6 at 5.) The response states: "Refused nursing sick call." It was not signed.

11    He sent a request on December 2, 2014, stating that he needed partials because he was

12    missing teeth in the back of his mouth which caused his gums to hurt when he would eat. (ECF No.

13    21-6 at 6; ECF No. 27 at 46.) He was told that he would be placed on the list. There was no

14    signature with the response.

15    He sent his next request on December 17, 2014, reiterating that he had missing teeth and

16    raw, swollen, painful gums. (ECF No. 21-6 at 7; ECF No. 27 at 48.) He was told: "You are on the

17    list. There is a very long list for dentures. We take care of toothaches first. When your name comes

18    up you will be called in." (*Id.*) The response was not signed.

19    On December 21, 2014, Plaintiff asked to be seen. (ECF No. 21-6 at 8.) The response

20    contains a notation that Plaintiff was seen on January 6, 2015. (ECF No. 21-6 at 8; ECF No. 27 at

21    50.)

22    On January 8, 2015[2], Plaintiff stated that he needed a dental exam to fix his other tooth

23    with a hole in it as his gums still hurt and were swollen. He also asked for something for his pain.

24    (ECF No. 21-1 at 15; ECF No. 27 at 52.)

25    On January 25, 2015, he wrote another request asking to be seen for the hole in his tooth

26    and to get dentures for the back of his mouth. (ECF No. 21-6 at 9.) He advised that his gums would

27    _____

28    [2] The request is actually dated by Plaintiff 1/8/14, but it is stamped 1/9/15 by the prison, and it appears that it should have been dated 1/8/15.

1    still bleed while eating, and he asked to be placed on a soft-diet. (*Id.*) He was told he would be

2    called in when his name came up. There is no signature with the response.

3        Plaintiff complained of painful teeth and bleeding gums, and asked to be seen on February

4    27, 2015. (ECF No. 21-6 at 10; ECF No. 27 at 54.) He was told that there was not a dentist available

5    at that time, and he would be placed on the schedule to be seen when a dentist was available. The

6    response was not signed.

7        On March 15, 2015, Plaintiff sent an inmate request form complaining of painful teeth and

8    sensitive gums, and asked to be placed on the list for a dental exam. (ECF No. 21-6 at 11; ECF No.

9    27 at 64.) He was advised that they did not have a dentist at that time. The response was signed by

10   Jones.

11       Plaintiff sent another inmate request form on April 6, 2015, stating that he was still waiting

12   for a dental exam for his tooth with a hole in it, swollen, bleeding and raw gums, and missing teeth

13   in the back of his mouth. (ECF No. 21-1 at 19; ECF No. 27 at 62.) He was again told there was no

14   dentist available, and that he would be placed on the schedule to be seen once a dentist was

15   available. The response was signed by Jones.

16       On April 28, 2015, Plaintiff complained that his teeth were hurting badly, that his gums

17   were still bleeding, and asked to see a dentist. (ECF No. 21-1 at 18; ECF No. 27 at 56.) Again, he

18   was told there was no dentist available.

19       A July 23, 2015 memorandum from defendant Carpenter indicated that arrangements were

20   being made to transport Plaintiff to another facility for dental care. (ECF No. 27 at 83.) Plaintiff

21   was advised that he would be on a "treat and return" for dental care, which would involve a one-

22   to two-week turnaround.

23       Plaintiff was sent to HDSP for this "treat and return." On September 12, 2015, he sent an

24   inmate request form advising that he was there from ESP for dental care, and he had a hole in a

25   tooth, as well as missing teeth on both sides of his mouth which required partial dentures. (ECF No.

26   21-4 at 5.) He also indicated he had been placed on a soft-food diet at ESP, and asked to be placed

27   on that diet at HDSP. He sent a similar request on September 21, 2015. (ECF No. 21-6 at 14.)

28

1    Plaintiff submitted a medical diet order form dated September 23, 2015, for a mechanical
2    soft diet due to "inadequate posterior teeth for proper chewing" signed by Paul Biter. (ECF No. 27
3    at 81.)

4    Plaintiff's next request is dated October 12, 2015, and he advised ESP officials that he had
5    been sent to HDSP for dental treatment for partial dentures and a tooth with a hole in it, but HDSP
6    told him they could not help him because he was not classified to that yard, and it would take
7    several appointments for the partials, and it was best to address the tooth with the hole at the same
8    time. (ECF No. 21-6 at 15; ECF No. 27 at 58.) He complained that the tooth with the hole in it was
9    sensitive and causing him pain. The response states: "Sent 10/13/15." It was signed by Kinternecht,
10   who Defendants represent is Gloria Kinternecht, RN. (*See* ECF No. 21 at 3.)

11   He sent another request on December 13, 2015, stating that he had a gum infection and
12   needed some peroxide. (ECF No. 21-6 at 16.) The response, signed by Kinternecht, states: "sent."

13   The next request is dated June 13, 2016, where Plaintiff stated that he had been submitting
14   requests for over a year asking for treatment for a broken tooth and partials. (ECF No. 21-6 at 17;
15   ECF No. 27 at 60.) He advised that he had been bartering and asking people to get him pain
16   medication from the store, and asked for treatment. The unsigned response stated: "You are on the
17   list."

18   **2. Grievance**

19   On January 11, 2015, Plaintiff filed an informal level grievance advising that he was placed
20   on the dental exam list in the beginning of 2014 to fix damaged teeth. (ECF No. 21-1 at 33-38.)
21   He stated that he had sent inmate requests for five months that his gums were raw, swollen, and
22   he was in pain. He was finally seen by a dentist on January 6, 2015, who told him that he had two
23   "really bad teeth": one was cracked through and missing a portion, and the other had a big hole in
24   it causing him sensitivity. The dentist fixed one tooth, and told Plaintiff to put in a kite to fix the
25   other one, and he should be seen in around four months. He advised that he had been submitting
26   requests concerning the pain, his gums bleeding, and his teeth cracking, but nothing had been done.
27   He also requested dentures because he had multiple missing teeth that caused problems with his
28   gums when he would eat.

1    Defendant Jones responded to the informal level grievance, stating: "Unfortunately at this

2    time we do not have a dentist. You will remain on the schedule to be seen when we do have a

3    dentist available. If you have issues please kite medical to be seen." (ECF No. 21-1 at 34.)

4    Plaintiff filed his first level grievance on April 6, 2015. (ECF No. 21-1 at 25-29.) He

5    reiterated his claims of bleeding, swollen gums, and pain in his mouth. He added that in the time

6    he had been complaining he had not been seen by a nurse, put on a soft-food diet, and was not

7    given any pain medication. He stated that he was suffering and needed attention.

8    Defendant Carpenter responded to the first level grievance, stating: "You had your teeth

9    examined by Dr. Calderon on June 8, 2015." (ECF No. 21-1 at 24.)

10    Plaintiff submitted his second level grievance, which largely repeats what he complained

11    of in the informal and first levels. (ECF No. 21-1 at 2-8.) He once again stated that he was in

12    serious pain with bleeding gums. He added that on June 9, 2015, he was put on a soft-food diet,

13    which was the only treatment he had received. He advised that he was still in pain, with sensitive

14    teeth and gums.

15    Defendant Aranas responded to the second level grievance, stating: "Mr. King, you are

16    currently on the list to be seen by dentist at the next scheduled time." (ECF No. 21-1 at 3.)

17    **B. Carpenter and Aranas**

18    Defendants Carpenter and Aranas argue that their only involvement was responding to

19    Plaintiff's first and second level grievances, respectively. They maintain that this is insufficient to

20    meet the requirement of personal participation required for liability under section 1983.

21    It is undisputed that Plaintiff's informal, first and second level grievance advised that

22    Plaintiff had been complaining of cracked and broken teeth, pain, and raw, bleeding, swollen gums

23    for months, and that he had one tooth fixed, but had yet to have the hole in the other tooth filled,

24    or the request for dentures for the missing teeth (which was causing his gum issues) addressed.

25    Defendant Carpenter told Plaintiff he had been examined on June 8, 2015, and defendant Aranas

26    advised him that he was on the list to be seen. In addition, Carpenter sent a memorandum stating

27    that arrangements were being made to transport Plaintiff to another facility for dental care, which

28    indicates that he had not received all the treatment he needed at ESP.

1    Deliberate indifference requires that a plaintiff establish that the prison official knew of

2    and disregarded an excessive risk to inmate health or safety. Simply responding to a grievance

3    may not always subject a prison official to liability. For example, if an inmate writes a grievance

4    concerning an alleged excessive force incident that has already occurred, it is unlikely that

5    responding to that grievance alone would subject the grievance responder to liability under the

6    Eighth Amendment because the responder could not have acted to prevent an act of excessive force

7    that had already occurred. On the other hand, when an inmate writes a grievance complaining that

8    they are not receiving treatment for a serious medical need and they continue to suffer in pain, they

9    are putting the prison official on notice, and if that prison official fails to act, they are subject to

10    liability under the Eighth Amendment.

11    The Ninth Circuit has also explicitly concluded that responding to a grievance may subject

12    a prison official to liability for violation of the Eighth Amendment.

13    In 2012, the Ninth Circuit concluded that a warden and associate warden who were aware

14    of grievances regarding the denial of a recommended hip surgery and failed to act to prevent further

15    harm were not entitled to summary judgment. *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir.

16    2012), *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014).

17    In addition, in August of 2014, the Ninth Circuit addressed an argument that the former

18    NDOC medical director was absolved of liability because he did not personally participate in an

19    alleged Eighth Amendment violation involving eye care within one of NDOC's facilities.

20    *Colwell v. Bannister,* 763 F.3d 1060, 1070 (9th Cir. 2014).  The Ninth Circuit found, however, that

21    the medical director had personally denied the inmate plaintiff's second level grievance which had

22    put him on notice that an optometrist had recommended surgery and that the inmate's lower level

23    grievances had been denied despite that recommendation. *Id.* The Ninth Circuit concluded that

24    even though the medical director's involvement was limited to responding to the plaintiff's second

25    level grievance, a reasonable jury could conclude that the medical director contributed to the

26    decision to refuse treatment in conscious disregard to an excessive risk to the plaintiff's health. *Id.*

27    Insofar as Defendants argue they are entitled to qualified immunity because the law was

28    not clear at the time of their conduct, they are also mistaken.

- 11 -

1   A qualified immunity analysis looks at: (1) viewing the facts in the light most favorable to

2   the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the right clearly established

3   at the time the defendant acted. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir.

4   2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017).

5   Defendants argue that they could not have violated the law because responding to a

6   grievance does not subject them to liability under 1983, and even if it did, the law was not clearly

7   established at the time.

8   Deliberate indifference requires that a plaintiff establish that the prison official knew of

9   and disregarded an excessive risk to inmate health or safety. Plaintiff has produced evidence that

10  he put Defendants on notice that he was suffering in pain due to a lack of dental treatment, and

11  they failed to act. Therefore, viewing the facts in the light most favorable to Plaintiff, there is

12  evidence that could be interpreted as violating Plaintiff's rights.

13  With respect to the second prong, the law of deliberate indifference was clear long before

14  Defendants responded to Plaintiff's grievance in 2015.  Moreover, the cases discussed above that

15  concluded that a grievance responder could be subject to liability were decided in 2012 and August

16  of 2014, and Plaintiff initiated his grievance in this case in January 2015. Therefore, the law was

17  in fact clearly established.

18  In sum, defendants Carpenter and Aranas are not entitled to summary judgment on the

19  basis that they did not personally participate in the alleged Eighth Amendment violation. Nor are

20  they entitled to qualified immunity based on this argument.

21  **C. Biter**

22  Defendant Biter, is a dentist, and it is argued that he did not personally participate in the

23  alleged constitutional violations as he did not treat Plaintiff in 2015-2016, make determinations

24  regarding Plaintiff's dental treatment, or respond to grievances, requests or kites.

25  There is no declaration from Dr. Biter stating that he was never involved in Plaintiff's

26  dental care. Instead, Defendants state that he was not involved in argument, pointing generally to

27  Plaintiff's dental records. They do not directly address Plaintiff's contention that Plaintiff saw

28  Dr. Biter when he was transferred for a brief period of time to HDSP. Moreover, Defendants do

1  not explain why the order from Dr. Biter concerning the soft-food diet that was submitted by

2  Plaintiff in support of his opposition is not part of Defendants' submission of exhibits.

3        Plaintiff has produced evidence that he continued to complain of pain and problems with

4  his teeth before, during and after he saw Dr. Biter, and his concerns were not remedied by

5  Dr. Biter's continuation of the soft-food diet. Therefore, Plaintiff has raised at least a genuine

6  dispute of material fact regarding Dr. Biter's participation in his care.

7        Dr. Biter is not entitled to qualified immunity based on a lack of personal participation

8  argument, when there is evidence in the record that creates a genuine dispute of material fact as to

9  whether he provided care to Plaintiff and whether he was deliberately indifferent to Plaintiff's

10  serious medical needs.

11        Summary judgment should be denied as to Dr. Biter.

12  **D. Luce**

13        Luce is a level II dental assistant, and argues that she did not personally participate in the

14  alleged constitutional violations as she did not treat Plaintiff when he visited the dentist between

15  2015 and 2016, and did not make any determinations regarding Plaintiff's dental treatment, or

16  respond to grievances, requests or kites.

17        The record reflects that Luce's only involvement was signing a May 5, 2014, medical

18  request form where Plaintiff said: "I would like to get a dental exam on my teeth." (ECF No. 21-6

19  at 2.) Unlike the majority of the other request forms, this form did not indicate Plaintiff was

20  experiencing any pain or discomfort in his teeth so as to put Luce on notice of a serious medical

21  need requiring attention. Therefore, the court agrees that there is no evidence that Luce participated

22  in an alleged Eighth Amendment violation related to Plaintiff's dental care. Summary judgment

23  should be granted as to Luce.

24  **E. Jones**

25        Jones acknowledges that she responded to at least four of Plaintiff's medical and inmate

26  requests, and also responded to his informal level grievance.

27        While his initial request in May of 2014, simply asked for a dental exam, the subsequent

28  requests as well as the grievance advised Jones that Plaintiff was in severe pain; that he had a hole

1    in his tooth; he had missing teeth, had sensitive, bleeding, raw and swollen gums; and, he needed

2    partial dentures. Her responses were that there was not a dentist at that time.

3        This is sufficient evidence for a reasonable jury to conclude that Jones contributed to the

4    lack of treatment or delay in treatment for a serious medical need that continued to cause Plaintiff

5    pain and discomfort. The evidence of Jones' personal participation in the alleged Eighth

6    Amendment violation includes both her review and responses to Plaintiff's requests and her review

7    and response to his informal level grievance. As the court discussed above, the law regarding

8    liability under the Eighth Amendment, and for a grievance responder in particular, was established

9    when the alleged violation took place; therefore, Jones is not entitled to qualified immunity on this

10   basis. Summary judgment should be denied as to Jones.

11   **IV. RECOMMENDATION**

12   **IT IS HEREBY RECOMMENDED t**hat the District Judge enter an order:

13   (1) **GRANTING** Defendants' Motion for Summary Judgment (ECF No. 21) as to

14   defendant Luce, but **DENYING** it as to the remaining Defendants; and

15   (2) **DENYING** defendant Jones' Motion for Summary Judgment (ECF No. 46).

16   This Report and Recommendation should be sent to Plaintiff at Southern Desert

17   Correctional Center (SDCC). Plaintiff is reminded of his obligation to keep the court apprised of

18   any change in address, and he is cautioned that a failure to do so may result in dismissal of his

19   action with prejudice under LSR 2-2.

20   The parties should be aware of the following:

21   1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

22   this Report and Recommendation within fourteen days of receipt. These objections should be titled

23   "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by

24   points and authorities for consideration by the district judge.

25   ///

26   ///

27   ///

28

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: May 25, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE